IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Steve Morgan, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Carolyn W. Colvin, Acting Commissioner )<br>of Social Security, )<br>)<br>Defendant. )<br>)<br>_____ ) | Civil Action No. 9:12-562-RMG<br><br>**ORDER** |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on March 20, 2013, recommending that the Commissioner's decision be affirmed. (Dkt. No. 13). The Plaintiff filed objections to the Report and Recommendation and the Commissioner filed a reply. (Dkt. Nos. 15, 16). As more fully set forth below, the decision of the Commissioner is reversed and remanded for further action consistent with this order.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a

determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). *Id.* § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. *Id.* § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a

detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

A Social Security claimant who satisfies the legal requirements for a work related disability may nonetheless be denied benefits under some circumstances if he has been noncompliant with medical treatment. *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985). The Fourth Circuit has ruled, however, that "[i]f noncompliance is ultimately to be found the basis for denying benefits," the Commissioner carries the burden of producing evidence and making a "particularized inquiry" that the claimant's condition was "reasonably remediable" and he "lack[ed] good cause for failing to follow a prescribed treatment plan." *Id.* at 990-91; *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 274 (D. Md. 2003). This may require the adjudicator "to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment." SSR

96-7P, 61 Fed. Reg. 34483, 34487 (July 2, 1996). Further, "[e]ssential to a denial of benefits" for noncompliance is a finding that if the claimant followed his prescribed treatment he could return to work. *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985).

## Discussion

Plaintiff alleges that he became disabled on and after May 30, 2008, as a result of a work related back injury. He was then working as a maintenance supervisor, a position which required considerable physical exertion and lifting. Transcript of Record ("Tr.") 77-78. Plaintiff was 46 years of age at the time of the alleged onset of his disability and is at the time of this order 50 years of age. Plaintiff's original complaints involved primarily lower extremity radicular pain and he was diagnosed with nerve root compression at L5-S1. Tr. 524, 529, 531. Plaintiff underwent a complex and elaborate surgical procedure performed by an orthopaedic surgeon, Dr. David Mitchell, on June 26, 2008, that included an anterior interbody fusion at the L5-S1 level and placement of cage instrumentation. Tr. 359-60. This surgery involves a frontal or anterior approach to the spine and is one of the most demanding and challenging procedures performed in orthopaedic surgery. Plaintiff's recovery was complicated by a severe post-operative staph infection that required months of intravenous antibiotics, multiple additional surgeries to irrigate and debride the wound site, and repeated visits to a wound care center. Tr. 327, 329, 331-32, 337-38, 341, 348, 350, 352, 355-56.

As Plaintiff recovered from his major surgery and its significant post-operative complications, he complained of continued radicular pain into his lower extremities, telling Dr. Mitchell in one office visit on February 25, 2009, that he had pain down his legs similar to what he had before the surgery. Tr. 302, 305-06, 314, 321. On March 11, 2009, Niel Visser, a

physical therapist, performed a Functional Capacity Assessment of Plaintiff and concluded that Plaintiff was capable of returning to medium work. Tr. 288-300. Dr. Mitchell concurred in this finding on March 17, 2009, noting the patient may need to be reassessed in a few months. Tr. 286. Plaintiff returned to Dr. Mitchell on May 13, 2009, complaining of pain in his back and lower extremities and walking with a slow gait. Tr. 566-67. Dr. Mitchell apparently suggested further operative treatment but the claimant indicated "he doesn't want anymore operative intervention." Tr. 567. Dr. Mitchell voiced skepticism about the previous assessment that Plaintiff was capable of medium work, noting he was out of work and "unable to return other than [to a] very light duty sedentary type of job with lots of restrictions." Tr. 567.

Plaintiff continued to remain out of work and several doctors examined him, apparently concerning a then pending workman's compensation claim and this Social Security disability claim. All examining physicians appeared to give credence to Plaintiff's complaints of persistent pain. Dr. Robert Schwartz, a pain medicine specialist, examined Plaintiff on June 1, 2009, and his impression included a L5-S1 nerve root injury and right piriformis syndrome. Tr. 399. Dr. S. Emmett Lucas III, an orthopaedic surgeon, performed an independent medical examination on September 4, 2009, and concluded, based on his personal interpretation of the radiographic films, that Plaintiff had loose pedicle screws and his fusion was not solid. Tr. 389. He indicated that he believed Plaintiff should undergo further surgery and the functional assessment indicating he could perform medium work needed to be repeated because of the patient's problems with prolonged standing. Tr. 389-90. On March 7, 2011, Dr. W. Russell Rowland, an internist, examined Plaintiff and concluded that Plaintiff's problems with prolonged standing limited him to standing less than two hours in an eight-hour work day. Tr. 480-81, 487. Plaintiff's medical

-6-

records were also subject to three chart reviews performed by internists, all of whom found Plaintiff's functional limitations restricted him to lifting no more than 10 pounds occasionally. Tr. 402, 430, 473. As explained by the Vocational Expert, such a lifting restriction limited Plaintiff to performing no more than sedentary work. Tr. 87.

Dr. Mitchell examined Plaintiff again during an office visit on February 8, 2011. Dr. Mitchell documented the patient's complaints of chronic pain and noted his slow, antalgic gait. Tr. 499. He indicated that he discussed with Plaintiff "consideration . . . [of] reinvestigation as needed of his instrumentation and screws in his lumbar spine" but that the patient was not "interested in any type of operative intervention at this time." Tr. 499. Dr. Mitchell followed this office visit with a letter to Plaintiff's counsel of March 14, 2011, in which he stated that "the patient has not been able to return to work and has continued to be unable to return to work." Tr. 497. He further indicated that Plaintiff could not perform a job where he had to sit or stand eight hours per day and would need significant accommodations that would include "frequently sitting down or laying down." *Id.*

The Administrative Law Judge ("ALJ") conducted an evidentiary hearing in this matter on May 18, 2011. Plaintiff testified that he has chronic lower back and radicular pain down both legs that is worsened with exertion. Tr. 70-71. He explained that he could perform such daily chores as light house cleaning, cooking on a microwave, and washing dishes so long as he limited his activities to approximately 15 minutes at a time. Tr. 70. He further explained that any type of twisting or bending, such as mopping or vacuuming, "takes it completely out of me" and "kills me." Tr. 68, 70. Plaintiff further testified that he organized his grocery shopping to buy the minimal things possible and to go through the shortest line to limit the length of time he

is required to stand. Tr. 73.

The ALJ issued an order on June 17, 2011, finding that Plaintiff was not disabled but was limited to sedentary work. Tr. 24. This included a lifting limitation of no more than 10 pounds occasionally and a restriction on standing or walking of no more than two hours in an eight hour workday. *Id.* The ALJ further found there were jobs in significant numbers in the national economy that Plaintiff could perform. Tr. 32.

In reaching these conclusions, the ALJ gave "no weight" to the opinions of the primary treating specialist physician, Dr. Mitchell, expressed in his letter of March 14, 2011. Tr. 28-29. The ALJ found that Dr. Mitchell's letter "fails to distinguish between the claimant being able to return to his past work and being able to do 'other work' in the national economy" and "does not speak to whether the claimant can engage in any full time work." Tr. 29. The ALJ also criticized an earlier entry in Dr. Mitchell's medical record of May 23, 2009, in which Dr. Mitchell noted that Plaintiff "has continued to be out of work and unable to return other than [to a] very light duty sedentary type of job with lots of restrictions." Tr. 567. The ALJ found that Dr. Mitchell's "extreme lack of specificity . . . precludes me giving [the opinion] more than minimal weight." Tr. 29. The record contains no indication that the ALJ attempted to contact Dr. Mitchell to obtain clarification and specificity regarding his opinions.

The ALJ also noted Plaintiff's unwillingness to undergo further surgery, suggesting that this raised doubts regarding the credibility of Plaintiff's complaints of chronic pain. Tr. 27, 29. The ALJ observed that Dr. Mitchell had indicated that additional surgery "might benefit him, pain wise" but Plaintiff was unwilling to allow Dr. Mitchell to perform additional surgery. Tr. 27. The ALJ did not address Plaintiff's testimony that he had been told that "the only alternative

... would be to go in and take everything out of the back and go in from the front and redo it," and there was "no guarantee that that would help." Tr. 75. Plaintiff further explained that in light of the major surgery he had already undergone and the months of post operative infection that "I just don't know if I can take another one." *Id.*

### A. The Failure to Follow the Letter and Spirit of the Treating Physician Rule

The Treating Physician Rule, 20 C.F.R. § 404.1527(c), clearly anticipates that the opinions of a claimant's treating physician will be given special weight and deference. Under certain circumstances, the opinion of the treating physician will be given controlling weight. *Id.* § 404.1527(c)(2). Where the opinion of the treating physician is not given controlling weight, "[t]reating source medical opinions are still entitled to deference" and must be weighed using the various factors set for in the treating physician rule, including the length and nature of treatment and whether the physician is a specialist. *Id.* §§ 404.1527(c)(1)-(6); SSR 96-2P, 61 Fed. Reg. 34490, 34491 (July 2, 1996). Further, to the extent the information from a treating physician is "inadequate for us to determine whether you are disabled . . . [w]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available." 20 C.F.R. § 404.1512(e)(1).[1]

---

[1] This regulation was modified on February 23, 2012, and the requirement of the adjudicator to contact the treating physician was removed. 77 Fed. Reg. 10651 (Feb. 23, 2012). This modification occurred, however, after Plaintiff's claim was filed and the administrative hearing was conducted in this matter, and this regulation remains binding on the Commissioner in this proceeding. Further, the Commissioner made clear that despite the removal of the universal requirement to contact the treating physician from the regulation, "we expect that our adjudicators would continue to recontact your medical source when we believe such recontact is the most effective and efficient way to resolve an inconsistency or insufficiency." How We Collect and Consider Evidence of Disability, 76 Fed. Reg. 20282 (proposed Apr. 12, 2011) (to be codified at 20 C.F.R. pts. 404 and 416). It is not clear to the Court how the ALJ could resolve any ambiguity regarding the scope or substance of Dr. Mitchell's opinions without addressing the

A review of the treatment afforded Dr. Mitchell's opinions in this matter reveals a failure to adhere to the most basic provisions of the Treating Physician Rule. First, there is no analysis of the treatment relationship and history of Plaintiff and Dr. Mitchell, which in this case is highly significant. Dr. Mitchell performed multiple surgical procedures on Plaintiff and saw him in his office more than a dozen times. Tr. 302-07, 317-19, 321-29, 331-32, 334-35, 337-38, 340-46, 348, 350, 355-56, 359-60, 497, 498-500, 526-27, 529-31, 533-35, 542, 566-68. Dr. Mitchell's lengthy and intimate involvement in Plaintiff's care through this difficult and highly complex surgery and post-operative period would appear to provide him "a detailed, longitudinal picture of the [claimant's] medical impairments" and "unique perspective of the medical evidence" that would normally entitle his opinions to the most careful consideration under the Treating Physician Rule. 20 C.F.R. § 404.1527(c)(2). No other physician in this record remotely had the type of treatment history with Plaintiff as Dr. Mitchell. However, this long and involved history is not noted by the ALJ or contrasted with the opinions of chart reviewers and one-time examiners whose opinions the ALJ has elected to adopt. Second, the ALJ failed to note that Dr. Mitchell, as an orthopaedic surgeon, is a specialist and did not contrast his area of specialty, particularly relevant in this matter, with the qualifications of the various chart reviewers and one-time examiners whose opinions were relied upon by the ALJ. *Id.* § 404.1527(c)(5). Indeed, the combination of Dr. Mitchell's lengthy treatment history and level of specialization would appear to make his opinions particularly probative under the standards of the Treating Physician Rule.

Third, the ALJ failed to recontact Dr. Mitchell to obtain clarification regarding what was allegedly unclear about the scope and substance of his opinions. If the ALJ could not discern

---

matter directly to the physician.

from Dr. Mitchell's March 14, 2011, letter whether Dr. Mitchell believed Plaintiff was disabled from all employment or only his former employment, all the ALJ had to do was contact Dr. Mitchell and obtain clarification. Under controlling regulatory law, he could not simply discard the opinion of the primary treating specialist physician on the thin reed that the opinion just was not clear. Similarly, if Dr. Mitchell's medical records of May 13, 2009, did not provide sufficient specificity relating to his opinion regarding the limitations Plaintiff would require to return to work, dismissing those opinions summarily because they allegedly showed an "extreme lack of specificity" is not good enough.

The Treating Physician Rule requires that if the opinions of a treating source are not adopted as controlling they will be carefully evaluated and contrasted with other medical opinions in the record pursuant to the specific standards set forth in § 404.1527(c). The ALJ's decision clearly does not meet that standard. Further, § 404.1512(e)(1) required the ALJ to recontact Dr. Mitchell to clarify any opinion regarding Plaintiff's disability which is insufficiently clear. She did not do this. These omissions require reversal of the decision of the Commissioner and remand for further action consistent with this opinion.

### B. Plaintiff's Refusal to Engage in Additional Surgery and the Impact on his Credibility.

The ALJ made no secret of her disapproval of Plaintiff's decision not to undergo further surgery which was either recommended or at least offered as a possible remedy for the claimant's chronic pain. Tr. 27, 29. It is certainly true that if a claimant is non-compliant with his medical treatment or fails to follow the treatment recommendations of his physician he may, under some circumstances, be disqualified from disability benefits. However, a claimant's reasonable

decision declining further complex and risky surgery that does not carry a strong probability of success should not have any adverse impact on a claimant's application for disability benefits or an assessment of his credibility. As Social Security Ruling 96-7P sets forth, an adjudicator in a Social Security disability proceeding "must not draw any inferences about an individual's . . . failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." 61 Fed. Reg. at 34487. The adjudicator must determine if the claimant has "good reasons" not to seek a particular medical treatment. *Id.* Further, the adjudicator must find that had the Plaintiff followed the recommended or offered treatment he most probably would have remediated his disability and been able to return to work. *Preston*, 769 F.2d at 990-91; *Fleming*, 284 F. Supp. 2d at 274.

The record before the Court does not remotely meet this standard and the failure of the ALJ to address these issues requires reversal and remand. The ALJ has not evaluated Plaintiff's explanation for declining further surgery (high risk, low benefit) and determined whether this constitutes "good reasons" for his decision. Moreover, the ALJ has not addressed the issue of whether Plaintiff's condition is most probably remediable with the surgery. If the ALJ seeks to utilize Plaintiff's refusal to consider further surgery as a basis, in whole or in part, to deny him Social Security disability benefits, she must on remand address Plaintiff's explanation and determine if "good reasons" exist for his decision. Further, if she determines Plaintiff does not have "good reasons" to decline further surgery, the ALJ must address the issue of whether his condition is most probably remediable with surgery so as to allow him to return to work.[2]

---

[2] The ALJ also challenges the Plaintiff's credibility regarding his complaints of pain because of his ability to perform certain activities of daily living ("ADLs"), such as cleaning his mobile home, cooking meals with a microwave, and driving an automobile. Tr. 25, 27, 28, 29.

## Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to Sentence Four of 42 U.S.C. § 405(g).[3]

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

April 25, 2013
Charleston, South Carolina

---

Plaintiff readily acknowledges his ability to perform various ADLs but asserts that he is limited to performing these tasks for periods no longer than 15 minutes at a time. Tr. 67-70. While a claimant's ability to perform ADLs is an appropriate factor to consider in evaluating a claimant's credibility regarding pain, it is also important to consider whether the claimant can sustain effort over the length of a workday. Therefore, the ALJ on remand should address the Plaintiff's testimony that he can perform his ADLs only over a brief period of time.

[3] In the course of this appeal, Plaintiff became 50 years of age on September 6, 2012. Under Social Security regulations, he became on his 50th birthday a "person approaching advanced age" and, with the findings of the Vocational Expert that Plaintiff was limited to sedentary work and is unskilled, he would generally be deemed disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201(g); 201.12. The record is silent on Plaintiff's present disability status. If he has not yet been deemed disabled upon reaching 50 years of age, this matter should be addressed by the ALJ on remand.